*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AAS, AAR1, AAR2, and AFR, Minors.

UNPUBLISHED
March 30, 2023

No. 362906
Clinton Circuit Court
Family Division
LC No. 21-030254-NA

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her four children[1] under MCL 712A.19b(3)(b)(*ii*) (failure to protect the children from sexual abuse), (g) (failure to provide proper care and custody), and (j) (risk of harm if the children are returned to the parent). Respondent-mother challenges the trial court's finding of statutory grounds for termination and the court's best-interests determination. The evidence supported that respondent-mother failed to protect her children from sexual abuse—even facilitating their victimization—and that termination was in all the children's best interests. Therefore, we affirm.

## I. BACKGROUND

In October 2021, the Department of Health and Human Services (DHHS) petitioned for the trial court to take jurisdiction over the four children. The petition alleged that AAR1, the second oldest child, had been sexually abused by her half-brother, an adult who was another one of respondent-mother's children. AAR2, the third oldest child, witnessed the molestation of AAR1. Earlier the same year, the oldest child, AAS, had reported to respondent-mother that this half-brother had attempted to sexually abuse her and masturbated in her presence, but respondent-mother did not believe AAS. Testimony presented throughout the proceedings also showed that AAS lived on her own in a home rented by respondent-mother for several years while respondent-mother and the younger children lived with her partner at another address. In December 2021, AAS was removed from respondent-mother's custody and temporarily moved in with her adult

---

[1] In order to protect the children's privacy, we have identified them only by initials in the caption of this opinion. We distinguish the children with identical initials as AAR1 and AAR2.

sister. At that time, the younger three children remained with respondent-mother. The trial court also exercised jurisdiction over the children.

In January 2022, AAS was reported missing. The ensuing law enforcement investigation uncovered concerns about AAS's involvement in sex trafficking, which led to assistance from the Federal Bureau of Investigation (FBI). Respondent-mother denied knowing where AAS was or being in contact with her, but after reviewing additional leads, law enforcement officials recovered AAS from another state. AAS subsequently disclosed that she had been in consistent communication with respondent-mother while she was missing. DHHS moved to show cause why respondent-mother should not be found in criminal contempt of court for failing to comply with the court's orders and her parent-agency agreements, which required respondent-mother to immediately report information about AAS's whereabouts. In February 2022, the trial court found by clear and convincing evidence that respondent-mother was in contempt of court and sentenced her to serve 90 days in jail. The trial court also removed the younger three children from respondent-mother's home.

The trial court ordered DHHS to initiate termination proceedings, and DHHS subsequently petitioned to terminate respondent-mother's parental rights. At a termination hearing, various law enforcement and DHHS officials testified about their involvement in the case, with significant evidence presented about the sexual abuse of AAR1, AAS's sexual exploitation, and respondent-mother's knowledge of AAS's activities. The foster care caseworker testified about her interviews with AAS and respondent-mother. AAS lived consistently by herself between the ages of 13 and 16. AAS disclosed that she had been in a relationship with an adult man since she was 14 years old. AAS had weekly contact with this man, and he was paying AAS for sexual favors between the ages of 14 and 16. Respondent-mother admitted to knowing about the man during an interview, but she refused to disclose any additional information because she indicated that she feared for her family's life.

AAS also disclosed that she was in a consistent sexual and domestically violent relationship with a different man, who AAS began seeing when she was 13 or 14 years old. Respondent-mother knew about this man, and AAS revealed that respondent-mother had encouraged her relationship with this man because he "kept [AAS] in check" and made her behave. AAS also disclosed that respondent-mother knew she had been working in a strip club. AAS gave some of the money earned through various sexual activities to respondent-mother. Respondent-mother confirmed that AAS received money for sexual favors but denied knowledge of any human trafficking affiliations. Respondent-mother even admitted to the caseworker that a large TV in AAS's bedroom had been purchased using the income AAS received in exchange for sexual favors. The caseworker also testified that AAR1 disclosed that respondent-mother and her partner had placed AAS on Craig's List to solicit her for sex trafficking. In addition, DHHS presented evidence that respondent-mother knew about allegations of sexual abuse by her adult son and yet left her children alone with the son. The son then sexually abused AAR1, with AAR2 witnessing the abuse.

The trial court determined that termination of respondent-mother's parental rights was warranted under MCL 712A.19b(3)(b)(*ii*), (g), and (j), and that termination of respondent-mother's parental rights was in all four children's best interests. This appeal followed.

## II. ANALYSIS

Respondent-mother challenges the trial court's finding of statutory grounds for termination and argues that termination of her parental rights was not in the children's best interests. We review the trial court's determination of statutory grounds and best interests for clear error. *In re Sanborn*, 337 Mich App 252, 272, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (quotation marks and citation omitted).

### A. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother first argues that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). DHHS has the burden to make this showing. MCR 3.977(A)(3). Clear and convincing evidence is clear, direct, and weighty evidence that allows the finder of fact to reach a conclusion without hesitancy. *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995).

Termination is warranted under MCL 712A.19b(3)(b)(*ii*) if there is clear and convincing evidence that "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse" and "[t]he parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home." Clear and convincing evidence overwhelmingly supported termination on this basis.

First, evidence showed that AAR1 suffered sexual abuse and that respondent-mother had the opportunity to prevent this abuse. AAS told respondent-mother that respondent-mother's adult son attempted to sexually abuse AAS, and AAS requested that respondent-mother not leave the younger children in his care. Yet respondent-mother left the younger children alone with the adult son, who then sexually abused AAR1. Thus, DHHS presented evidence that respondent-mother knew about the attempted sexual abuse of AAS and still allowed her adult son to spend time with her younger children, leading to the sexual abuse of AAR1. Respondent-mother "had the opportunity to prevent the . . . sexual abuse" of AAR1 and "failed to do so." MCL 712A.19b(3)(b)(*ii*).

Further, recordings of jail phone calls between respondent-mother and her adult son showed that respondent-mother was upset that AAS had called the police to report the son's abuse of AAR1. Respondent-mother's statements demonstrated that, even after AAS and AAR1 had accused the adult son of sexual abuse, respondent-mother supported the son and disbelieved the allegations. This minimization of the son's alleged conduct is persuasive evidence that the children are reasonably likely to suffer abuse if returned to respondent-mother's custody. Not only that, but respondent-mother allowed AAS to live alone and engage in sex work as a teenager, and she received money from AAS's exploitation. According to AAS's disclosures, respondent-mother

encouraged her relationships. The evidence suggests that respondent-mother facilitated, or at least knew about, the solicitation of sexual activity by AAS for several years. Respondent-mother did not simply turn a blind eye by failing to intervene, but she actively participated in her daughter's sexual exploitation by accepting money and letting AAS live by herself as a minor without supervision. Respondent-mother claims that she provided a safe environment for her three younger children, but the record clearly belies this assertion. In sum, respondent-mother's egregious conduct in failing to prevent the sexual abuse of AAR1, and her indifference to the sexual exploitation of AAS, supports the conclusion that there is a "reasonable likelihood that the child[ren] will suffer injury or abuse in the foreseeable future" if returned to respondent-mother's care. MCL 712A.19b(3)(b)(*ii*).

Therefore, clear and convincing evidence supported termination of respondent-mother's parental rights under MCL 712A.19b(3)(b)(*ii*). The trial court did not err by finding this statutory ground had been satisfied. Once at least one statutory ground for termination is established, we "need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009). Accordingly, we decline to address whether termination was also proper under MCL 712A.19b(3)(g) and (j).

## B. BEST INTERESTS

Respondent-mother next argues that it was not in the children's best interests to terminate her parental rights because she was bonded with them and because a guardianship would have preserved that bond.

"Even if the trial court finds that [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5). The focus of the best-interest determination is on the children, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). Factors to consider include "the child[ren]'s bond to the parent, the parent's parenting ability, the child[ren]'s need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Other relevant considerations are "the parent's compliance with his or her case service plan, the parent's visitation history with the child[ren], the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. "The trial court has a duty to decide the best interests of each child individually." *Olive/Metts*, 297 Mich App at 42. But unless "the best interests of the individual children *significantly* differ," the trial court need not make "redundant factual findings concerning each child's best interests." *White*, 303 Mich App at 715-716.

In this case, the trial court considered respondent-mother's bond with each child and found that it was unhealthy and had been strained because respondent-mother had failed to protect the children. The trial court also considered a variety of other factors, such as the benefits of the children's current placements, how the children were doing in their placements, and whether the children were likely to be adopted. The record supports the trial court's findings that termination

-4-

was in each of the children's best interests. With respect to AAS, the trial court found that her bond had been weakened substantially by respondent-mother putting her into unhealthy, dysfunctional, and harmful situations. AAS lived on her own at a young age, and respondent-mother's complicity in AAS's sex trafficking raises serious concerns about whether such a bond is healthy. AAS was receiving trauma-informed services for survivors of sexual exploitation, she was complying with the structure of the program, and she was doing well in school.

Termination was also in the younger three children's best interests. AAR1 was fearful to report incidents of abuse to respondent-mother because she was worried that respondent-mother would punish her. Respondent-mother's indifference led to AAR1's victimization by her adult brother, and AAR2 witnessed this abuse. Both children were visibly shaken at the time and suffered emotional harm from respondent-mother's failure to protect them. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Notably, all three of the younger children, who were living together in a non-relative foster care placement, expressed a desire for adoption. AAR1 reported that she wanted routine, consistency, and "a life of a child." The foster parents also expressed an interest in adopting the children. All of the children's needs were met in their pre-adoptive home, and they were doing well in school.

Respondent-mother's disturbing conduct throughout these proceedings exemplified her poor parenting skills. It is, of course, in the children's best interest to be in an environment free of sexual abuse, including the risk that such abuse will occur by being exposed to predatory individuals. Respondent-mother's encouragement and indifference to the harm suffered by her children showed that she could not be trusted to provide her children with a safe environment. Considering all the evidence, the trial court did not err by finding that termination of respondent-mother's parental rights was in the children's best interests.

Finally, respondent-mother argues that the trial court should have placed the children in a guardianship rather than terminating her parental rights. In order for a court to consider the appointment of a guardian in an effort to avoid terminating a parent's parental rights, one of two conditions must be met: either DHHS must establish that initiating the termination of parental rights is clearly not in the children's best interests or the court must not order DHHS to initiate termination proceedings. *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019). In this case, neither condition has been met: DHHS did not demonstrate that termination was not in the children's best interests, and the court ordered DHHS to initiate termination proceedings. There is also no indication in the record that a guardianship was requested or that anyone would have agreed to that arrangement. Respondent-mother is not entitled to appellate relief on this basis.

Affirmed.

/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney